# ORIGINAL

FILED IN CLERK'S OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Atlanta Division

JUL 1 3 2004

LUTHER D. ⬚⬚⬚⬚⬚, Clerk
By: ⬚⬚⬚⬚⬚ Deputy Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE STATE OF GEORGIA and )<br>CATHY COX, Secretary of State )<br>of Georgia, )<br><br>Defendants. )<br>_____ ) | Civil Action No.<br><br>**1:04-CV-2040**<br><br>**CAP** |

## COMPLAINT

1.  This action is brought by the Attorney General of the United States pursuant to the Uniformed and Overseas Citizens Absentee Voting Act of 1986, 42 U.S.C. §§ 1973ff to 1973ff-6 ("UOCAVA"), which provides that absentee uniformed services voters and overseas voters shall be permitted "to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. § 1973ff-1. The Attorney General is granted enforcement powers under UOCAVA, 42 U.S.C. § 1973ff-4, and files this complaint to ensure that United States citizens living abroad, who are qualified to vote in the federal primary election of July 20, 2004, and any federal primary runoff election to be conducted on August 10, 2004, in the State of Georgia, and who have filed timely applications for absentee ballots, will have an opportunity to vote in those elections and have their ballots cast.

counted.

2.  This Court has jurisdiction of this action pursuant to 42 U.S.C. § 1973ff-4 and 28 U.S.C. §§ 1345 and 2201.

3.  Defendant State of Georgia is charged with the responsibility of assuring that Georgia election laws, as applied, comply with the provisions of the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. §§ 1973ff to 1973ff-6.

4.  Defendant Cathy Cox is Secretary of State of Georgia and is sued in her official capacity.  The Secretary of State is the chief election officer of Georgia, and as such is responsible for the administration of state laws affecting voting, and for assuring that elections in the State are conducted in accordance with law.  Ga. Code § 21-2-50.  The Secretary's principal office is in Atlanta, Georgia.

5.  In the federal primary election of July 20, 2004, the voters of the State of Georgia will participate in the selection of nominees for the United States Senate and for the United States House of Representatives.  Any primary runoff election necessary for nomination to those offices will be held on August 10, 2004.  A federal general election will be held November 2, 2004, with any runoff following that election to be held on November 23, 2004.

6.  County election officials in the State of Georgia have received timely requests for absentee ballots from overseas voters who are entitled to vote under UOCAVA.

7.   Under Georgia law, absentee ballots sent from overseas civilian and military voters must be received by the close of the polls on the day of the election to be counted for all federal and state offices, and must otherwise satisfy the requirements of Georgia law.  Ga. Code § 21-2-386(a)(1).  For the federal primary election of Tuesday, July 20, 2004, the deadline for receipt of absentee ballots is the close of the polls on election day, i.e., 7 p.m. Eastern Daylight Time on July 20, 2004.  Ga. Code § 21-2-403.  If a federal primary runoff election is required, the deadline for receipt of absentee ballots for that election is the close of the polls on election day, i.e., 7 p.m. Eastern Daylight Time on August 10, 2004.  Ga. Code § 21-2-403.

8.   In order to provide overseas citizens a fair opportunity to vote by absentee ballot, election officials in Georgia must mail the ballots to the voters sufficiently in advance of election day to allow the voter to receive the ballot, cast a vote, and return the ballot to the office of the election official by the deadline established under Georgia law.

9.   The United States Postal Service estimates that a period of seven to 10 days is a reasonable benchmark from the time of posting to the time of delivery of international mail, and that a period of 20 to 34 days is a reasonable benchmark for a round trip if the addressee responds on the day the letter is received. The United States Military Postal Service Agency estimates that a period of seven to 14 days is a reasonable benchmark from the

-3-

-4-

time of posting to the time of delivery of international military

mail, and that at least 30 days are necessary for mail sent to

overseas military personnel to make a complete round trip. This

estimate takes into account the fact that some military personnel

are stationed in remote areas.  The Federal Voting Assistance

Program of the Department of Defense recommends that states allow

40 to 45 days for round trip mailing time for overseas ballots.

10.  In many Georgia counties, election officials failed to

mail absentee ballots to qualified overseas citizens who had

filed timely requests for such ballots sufficiently in advance of

the July 20, 2004, federal primary election to allow voters to

receive the ballot, cast a vote for all federal offices, and

return the ballot to election officials in time to be counted

under Georgia law.  Specifically, an electronic mail survey by

the Elections Division of the Office of the Secretary of State of

Georgia, conducted between July 8 and 9, 2004, at the request of

the United States, showed as follows:

(A) Of Georgia's 159 counties, 118 counties reported having

absentee ballot applications from overseas voters on hand as of

June 21, 2004, i.e., 29 days before the election.  Twenty-nine

(29) counties reported they had received no applications by June

21, 2004, and 12 other counties did not respond to the survey.

(B) Only 59--exactly half--of the 118 counties with overseas

voters' ballot applications on hand by June 21, 2004, reported

mailing absentee ballots to overseas voters on or before that

date.  Thirty (30) counties reported mailing absentee ballots to
overseas voters between June 21 and 23, 2004, i.e., between 27
and 29 days before the election, and 12 counties reported mailing
absentee ballots to overseas voters between June 28 and July 8,
2004, i.e., between 12 and 22 days before the election.

11.  The failure of election authorities in Georgia to mail
absentee ballots to military and civilian overseas voters
sufficiently in advance of July 20, 2004, to allow the voting and
return of ballots by the close of the polls on that election day
will deprive United States citizens of an opportunity to vote in
a federal primary election contrary to the provisions of UOCAVA.

12.  Because of the compressed time period between
certification of the June 20, 2004, primary election and the
August 10, 2004, runoff election date, if any federal runoff
elections are held, Georgia election officials will not be able
to mail absentee ballots to military and civilian overseas voters
sufficiently in advance of the runoff election to allow the
voting and return of ballots by the close of the polls on that
election day, which will deprive United States citizens of an
opportunity to vote contrary to the provisions of UOCAVA.

13.  The compressed time period between the federal general
election of November 2, 2004, and the runoff for that election,
if one is necessary, imposes a like constraint on the ability of
Georgia election officials to comply with UOCAVA for the runoff.

14.  An order of this Court is necessary requiring the State

to take corrective action in order to protect the rights granted
by the Uniformed and Overseas Citizens Absentee Voting Act.

WHEREFORE, plaintiff prays that this Court hear this action
pursuant to 42 U.S.C. § 1973ff-4 and 28 U.S.C. § 1345; issue a
declaratory judgment under 28 U.S.C. § 2201 that the late mailing
of absentee ballots in the State of Georgia that has already
occurred for the federal primary election of July 20, 2004, and
that is inevitable for the federal primary runoff election of
August 10, 2004, violates UOCAVA; and issue preliminary and
permanent injunctive relief ordering the defendants, their agents
and successors in office, and all persons acting in concert with
them:

> (1)  to take such steps as are necessary to require
> that appropriate election officials count as
> validly cast ballots, in contests relating to the
> selection of nominees for federal office, those
> ballots cast by persons outside the United States
> who are qualified to vote in the State of Georgia
> pursuant to the Uniformed and Overseas Citizens
> Absentee Voting Act, 42 U.S.C. §§ 1973ff to
> 1973ff-6, and who timely applied for absentee
> ballots from appropriate election officials for
> the July 20, 2004, federal primary election, as
> long as such ballots are received by appropriate

-6-

election officials before the close of business on
August 3, 2004, and otherwise satisfy the
requirements of Georgia law, provided that
election results may be formally certified on
ballots received by the close of the polls in any
election in which the number of outstanding
absentee ballots from voters covered by UOCAVA
could not mathematically alter the outcome,
subject to amendment or recertification for any
election where such ballots returned by the
extended receipt deadline change the total of
votes cast for any candidate;

(2)    to order that election officials throughout the
State accept for federal offices, at the July 20,
2004, primary election, the federal write-in
absentee ballot (FWAB) provided for in UOCAVA, 42
U.S.C. § 1973ff-2;

(3)    to order that election officials throughout the
State make available for the July 20, 2004,
federal primary election additional methods for
sending and receiving absentee ballots to and from
overseas voters, such as air express services and
facsimile transmission, in addition to traditional
mail service;

(4)    to take such steps as are necessary to afford

military and civilian overseas voters eligible to participate in the July 20, 2004, federal primary election a reasonable opportunity to learn of this Court's order, including individualized notice to affected voters and public service announcements in relevant overseas media;

(5)    to provide a report to the United States, within 45 days after the July 20, 2004, federal primary election, setting forth the number of military and other overseas ballots, including FWABs, received and counted for the said federal primary election;

(6)    to take such steps as are necessary to afford military and civilian overseas absentee voters eligible to vote in Georgia under the Uniformed and Overseas Citizens Absentee Voting Act a fair and reasonable opportunity to participate in any federal primary runoff election that occurs on August 10, 2004; and

(7)    to take such steps as are necessary to afford military and civilian overseas absentee voters eligible to vote in Georgia under the Uniformed and Overseas Citizens Absentee Voting Act a fair and reasonable opportunity to participate in all future primary, primary runoff, and general elections for federal office, beginning with the

-8-

federal general election of November 2, 2004, and any runoff that may be necessary following that election.

The United States further prays that this Court grant such other and further relief as the interests of justice may require.

Respectfully submitted,

JOHN D. ASHCROFT
Attorney General

By: _____
R. ALEXANDER ACOSTA
Assistant Attorney General
Civil Rights Division

SALLY QUILLIAN YATES
Acting United States Attorney for
the Northern District of Georgia

By: _____
AMY BERNE
Assistant United States Attorney
Ga. Bar No. 006670
600 United States Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
(404) 581-6261
(404) 581-6181 (fax)

_____
JOSEPH D. RICH
Chief, Voting Section
Civil Rights Division

_____
REBECCA J. WERTZ
STEPHEN B. PERSHING
AMY H. ZUBRENSKY
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Room 7254-NWB
Washington, D.C. 20530
(202) 305-1238
(202) 307-3961 (fax)