# ORIGINAL

FILED IN CLERK'S OFFICE

JUL 1 3 2004

LUTHER... ...erk
By: 
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Atlanta Division

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE STATE OF GEORGIA )<br>and CATHY COX, Secretary of State )<br>of Georgia, )<br><br>Defendants. )<br>_____ ) | Civil Action No.<br><br>**1:04-CV-2040**<br><br>**CAP** |

### UNITED STATES' MOTION
### FOR TEMPORARY RESTRAINING ORDER
### AND PRELIMINARY INJUNCTION

The United States, as plaintiff in the above-captioned case, hereby moves for a temporary restraining order and preliminary injunction relieving Georgia's qualified overseas absentee voters of the consequences of the defendants' violation of the Uniformed and Overseas Citizens Absentee Voting Act of 1986, 42 U.S.C. § 1973ff et seq., with regard to the federal primary election of July 20, 2004.

The reasons for this motion are set forth in the attached memorandum of law pursuant to United States District Court (N.D. Ga.) Loc. R. 7.1(A)1. A proposed order also is attached.

Respectfully submitted,

SALLY QUILLIAN YATES
Acting United States
Attorney
AMY BERNE
Assistant United States
Attorney
Ga. Bar No. 006670
600 United States Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
(404) 581-6261
(404) 581-6181 (fax)

JOSEPH D. RICH
REBECCA J. WERTZ
STEPHEN B. PERSHING
AMY H. ZUBRENSKY
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.,
Room 7254-NWB
Washington, D.C. 20530
(202) 305-1238
(202) 307-3961 (fax)

Dated: _____

## CERTIFICATE OF SERVICE

I certify that on this ¹³ th day of July, 2004, I caused a copy
of the foregoing Motion for Temporary Restraining Order and
Preliminary Injunction, and accompanying Memorandum of Law in
Support of the Motion, Attachments, and Proposed Order, to be
delivered by electronic mail to counsel for the defendants, as
follows:

Dennis R. Dunn, Esq.
Deputy Attorney General
Government Services and Employment Division
Office of the Attorney General of Georgia
40 Capitol Square, S.W.
Atlanta, GA 30334
(404) 656-3380
(404) 657-9932 (fax)

Clifford D. Tatum, Esq.
Deputy Director for Legal Affairs
Elections Division
Office of the Secretary of State of Georgia
2 Martin Luther King, Jr. Drive, S.E.
Suite 1104, West Tower
Atlanta, GA 30334
(404) 656-2871
(404) 651-9531 (fax)

_____
Stephen B. Pershing

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Atlanta Division

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
    v.                             )    Civil Action No.
                                   )
THE STATE OF GEORGIA and           )
CATHY COX, Secretary of State      )
of Georgia,                        )
                                   )
            Defendants.            )
_____)

## TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

This is an action under the Uniformed and Overseas Citizens
Absentee Voting Act of 1986, 42 U.S.C. § 1973ff et seq.
("UOCAVA"). The plaintiff, United States of America, has moved
for a temporary restraining order and preliminary injunction with
regard to the federal primary election of July 20, 2004 and any
necessary runoff election on August 10, 2004. Specifically, the
United States seeks a remedy for Georgia officials' failure to
make timely mailing of absentee ballots to the State's qualified
overseas voters in violation of UOCAVA.

Pursuant to Fed. R. Civ. P. 65, and for good cause shown,
the Court finds (a) that the United States has demonstrated a
high likelihood of success on the merits of its claims for relief
under UOCAVA; (b) that irreparable disenfranchisement harm would
flow to the Georgia overseas voters protected by UOCAVA if

immediate injunctive relief is not granted on the United States'
motion; (c) that the harm to defendants from the administrative
inconvenience of accepting the federal write-in ballot, accepting
certain absentee ballots late, and allowing alternative methods
of return of those ballots is slight when compared with the harm
to Georgia's overseas voters, many of whom are deployed on
dangerous duty in the U.S. armed forces, if they are
disenfranchised in violation of UOCAVA; and (d) the public
interest strongly favors enforcement of those rights by
injunction under present time-exigent circumstances.

Accordingly, because the time remaining before the federal
primary election at issue is so short, and in order to afford
relief as complete as practicable for the UOCAVA violations
complained of, it is ORDERED as follows:

1.   For the federal primary election of July 20, 2004, the
defendants shall take all steps necessary to ensure that all
absentee ballots from overseas voters who are protected under
UOCAVA, who are otherwise eligible to vote in this election, and
whose applications for absentee ballots were received by June 21,
2004, are counted as validly cast ballots with respect to all
federal offices, if they were executed by the close of the polls
on July 20, 2004, and received by the State or any county via
traditional mail, facsimile transmission, or express or overnight
mail by 5 p.m. on August 3, 2004, in the form of either an
official absentee ballot or photocopy thereof, or the Federal

Write-in Absentee Ballot ("FWAB").

2.  For the federal primary runoff election of August 10, 2004, if one is required, the defendants shall take all steps necessary to provide the same assurance with regard to absentee ballots executed by UOCAVA-covered overseas voters by the close of the polls on August 10, 2004, and received by 5 p.m. on August 24, 2004.

3.  Election results for any federal office at the elections of July 20, 2004, and August 10, 2004, may be formally certified on ballots received by the close of the polls in any contest in which the number of outstanding absentee ballots from overseas voters covered by UOCAVA could not mathematically alter the outcome, subject to amendment or recertification for any contest where such ballots returned by the extended receipt deadline change the total of votes cast for any candidate.

4.  The defendants shall take all steps necessary to enable qualified overseas voters to return absentee ballots for the federal primary election of July 20, 2004, and the federal primary runoff election of August 10, 2004, if one is required, via facsimile transmission or via express or overnight mail at the defendants' expense.

5.  The defendants shall provide and publicize a central location for receipt of facsimile return of overseas voters' voted absentee ballots for any county in the State.

6.  The defendants shall promptly and via overnight mail

-3-

dispatch such voted ballots, and voted ballots received by the
State from such voters via traditional mail, or via express or
overnight mail, to the appropriate county officials for counting.

7.   The defendants shall take all necessary steps to
preserve the secrecy of an overseas voter's ballot in its further
transmission to the receiving counties.

8.   The defendants shall provide and publicize a method for
the use of overnight or express mail for the return of voted
absentee ballots directly to the receiving counties at no cost to
the voters.

9.   The defendants shall require that for purposes of the
federal primary election of July 20, 2004, and any federal
primary runoff election of August 10, 2004, the sworn attestation
of a qualified overseas voter, signed and dated, that the voter's
absentee ballot was cast before the close of the polls on
election day, be sufficient to establish timeliness of execution
of any absentee ballot that is otherwise valid, without proof of
mailing or delivery from any U.S. or other postal service or
public or private mail carrier.

10.   The defendants shall notify the Director of the Federal
Voting Assistance Program ("FVAP") of the United States
Department of Defense as soon as this decree has been signed and
request that the FVAP take such action as is necessary to notify
overseas voters of the relief afforded in this Order, including
the extension of time for receipt of absentee ballots.   The

-4-

defendants shall assist the FVAP in whatever way may be reasonably necessary to aid that agency in publicizing this extension of time.

11. In addition to the publicity described in the preceding paragraph, the defendants shall take the following steps to endeavor to give affected voters notice of the contents of this Decree:

(A) Issue a press statement for immediate release, posted immediately on the Georgia Secretary of State's Web site, and distributed as broadly and immediately as practicable to national and local wire services, to radio and television broadcast stations within the State, and to daily newspapers of general circulation in the State, describing this Decree, advising the press of its newsworthiness, and specifically giving members of the press a way to contact senior officials of the Georgia Elections Division for answers to questions.

(B) Produce and distribute public service announcements describing this Decree for broadcast on radio and television networks, including but not limited to the U.S. Armed Forces Network, and announcements describing this Decree on World Wide Web sites of interest to military and non-military U.S. citizens living abroad.

(C) Publish paid advertisements describing this Decree and the relief afforded therein in at least a single day's issue of all international and domestic editions of the International

Herald Tribune, USA Today, Stars and Stripes, the Army Times and the Navy Times.

(D) In each of the 30 Georgia counties that completed the mailing of absentee ballots to its UOCAVA-covered overseas voters later than June 23, 2004, as documented in the chart attached to this Decree as Attachment 1, take all steps reasonably necessary, including the use of all available public records and personal knowledge, to locate each UOCAVA-covered overseas voter individually; to notify each such voter individually, by electronic mail, telephone or facsimile, of the relief contained in this Order; and to offer electronic or other means faster than traditional mail service of transmitting or re-transmitting an absentee ballot to each such voter.

12. Within 45 days after July 20, 2004, the defendants shall file a report with this Court, with respect to the July 20, 2004, federal primary election, which sets forth the following information:

(A) the dates on which each of the 159 counties in the State of Georgia began and completed the process of mailing ballots to overseas voters as defined by UOCAVA;

(B) the number of valid absentee ballots received by each county by the close of the polls on July 20, 2004, from such voters, and the means by which each ballot was received;

(C) the number of absentee ballots, by county, received and counted after the close of the polls on July 20, 2004, but

-6-

prior to 5 p.m. on August 3, 2004, from such voters, and the means by which each ballot was received; and

(D) the number of absentee ballots, by county, received from such voters later than 5 p.m. on August 3, 2004, and for that reason not counted, and the means by which each such ballot was received.

13. Within 45 days after August 10, 2004, the defendants shall file a report with regard to the federal primary runoff election of August 10, 2004, which corresponds in every particular to the report described in the preceding paragraph.

14. The Court retains jurisdiction of this action to enter such further relief as may be necessary for the effectuation of the terms of this Decree, and for the entry of such relief as may abate, for the November 2, 2004, federal general election and all federal primary and general elections and runoff elections thereafter, the conditions that gave rise to the UOCAVA violations complained of in the United States' complaint.


ORDERED this _____ day of July, 2004.


_____
United States District Judge


-7-

# ORIGINAL



FILED IN CLERK'S OFFICE

JUL 13 2004

LUTHER D. THOMAS, Clerk
By: _W. Rose_ Deputy Clerk



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Atlanta Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | **1:04-CV-2040** |
| THE STATE OF GEORGIA and ) | |
| CATHY COX, Secretary of State ) | |
| of Georgia, ) | |
| ) | **CAP** |
| Defendants. ) | |
| _____ ) | |

### MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION
### FOR TEMPORARY RESTRAINING ORDER
### AND PRELIMINARY INJUNCTION

## I. Introduction

This is a civil action under the Uniformed and Overseas
Citizens Absentee Voting Act, 42 U.S.C. 1973ff et seq. ("the Act"
or "UOCAVA"). Plaintiff United States of America, pursuant to
Rule 65 of the Federal Rules of Civil Procedure, seeks immediate
injunctive relief against the State of Georgia and its chief
election officer to enforce the right of military and civilian
overseas voters under UOCAVA to register and vote by absentee
ballot in any federal election in the state in which they reside
or last resided.

This action arises from the late mailing of absentee ballots
to overseas voters for the Georgia federal primary election on

July 20, 2004. Numerous Georgia voters located overseas submitted timely requests for absentee ballots for this election,[1] but were not mailed absentee ballots in a timely fashion. The defendants' failure to mail absentee ballots to qualified overseas voters sufficiently in advance of election day to permit them to return their ballots in time to be counted will result in the disenfranchisement of these voters unless this Court affords relief.

The United States seeks several remedial actions for this election: (1) an order extending by 14 days, from July 20 to August 3, 2004, the deadline for receipt of absentee ballots for this election from qualified overseas voters; (2) an order requiring the acceptance of the federal write-in absentee ballot on the same terms as all other ballots accepted under (1) above; (3) an order requiring the defendants to make available methods for the accelerated return of absentee ballots from qualified overseas voters, such as air express and facsimile transmission, in addition to traditional mail service; (4) an order requiring the defendants to inform qualified overseas voters of this

---

[1] Absentee ballot requests that are termed "timely" in this memorandum are those that were made 30 days or more in advance of the election, i.e., those requests that receive the protection of UOCAVA. See 42 U.S.C. § 1973ff-1 (quoted infra). Monday, June 21, 2004, the date used by the United States for calculating the lateness of ballot mailings in this action, was the 29th day before the July 20 primary.

-2-

relief, by means of notice to affected voters and public service announcements in relevant overseas media; (5) an order requiring a report to the Court and the United States, within 45 days after the election, on the number of absentee ballots, including FWABs, received from qualified overseas voters and counted for the said federal primary election; and (6) an order requiring the State to take similar steps to afford military and civilian overseas voters eligible to vote in Georgia under UOCAVA a fair and reasonable opportunity to participate in any federal primary runoff election that occurs on August 10, 2004.

In addition, and separate from the present request for immediate injunctive relief, the United States' complaint seeks such relief as will afford military and civilian overseas voters eligible to vote in Georgia under UOCAVA a fair and reasonable opportunity to participate in future primary and general elections for federal office, beginning with the federal general election of November 2, 2004, and any runoff that might be held following that election.

II. Statutory Basis For This Action

Section 102 of UOCAVA provides in relevant part as follows:

Each State shall –

(1) permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary and runoff elections for Federal office;

-3-

(2)    accept and process, with respect to any general,
       special, primary, or runoff election for Federal
       office, any otherwise valid voter registration
       application and absentee ballot application from an
       absent uniformed services voter or overseas voter, if
       the application is received by the appropriate State
       election official not less than 30 days before the
       election. . . .

42 U.S.C. § 1973ff-1.

The core protection of UOCAVA is that American citizens who
are overseas--both military and civilian--have the right to
register and vote by absentee ballot in federal elections
conducted by the state in which they were last domiciled.
42 U.S.C. §§ 1973ff-1, 1973ff-6. In order to allow qualified
citizens to exercise this right, states must ensure that absentee
ballots are mailed sufficiently in advance of a scheduled
election so as to allow the receipt, execution and return of the
ballot to the appropriate election official by the state
statutory deadline. UOCAVA protects qualified overseas voters
whose requests for absentee ballots were in the hands of
appropriate election officials at least 30 days before the
federal election in which they wished to vote absentee.

III. Facts

On July 20, 2004, Georgia will hold primary elections for
candidates for federal office, including United States Senator
and Members of the United States House of Representatives. Any
federal primary runoff that is required after this election will

-4-

take place on August 10, 2004.

Under Georgia law, absentee ballots must be received by county election officials by the close of polls on election day to be counted in a primary election. See Ga. Code § 21-2-386(a)(1). For the federal primary election at issue, the deadline for receipt of absentee ballots is the close of the polls on election day, i.e., 7 p.m. Eastern Daylight Time on July 20, 2004. For the runoff, if one is required, the deadline for receipt of absentee ballots is the close of polls on election day, i.e., 7 p.m. Eastern Daylight Time on August 10, 2004.

The United States Postal Service estimates that a period of seven to 10 days is a reasonable benchmark from the time of posting to the time of delivery of international mail, and that a period of 20 to 34 days is a reasonable benchmark for a round trip if the addressee responds on the day the letter is received. See Declaration of J. Scott Wiedmann, Attachment 2 hereto, at ¶ 6. The United States Military Postal Service Agency estimates that a period of seven to 14 days is a reasonable benchmark from the time of posting to the time of delivery of international miliary mail, and that at least 30 days are necessary for mail sent to overseas military personnel to make a complete round trip. Id. at ¶ 7-8. This estimate takes into account the fact that some military personnel are stationed in remote areas.

-5-

For this election, many of Georgia's counties reported mailing qualified overseas voters their ballots later than June 21, 2004. A number of counties mailed their absentee ballots much later, as is explained in detail below. This late mailing left insufficient time, in some cases as few as 12 days, between the absentee ballot mailing date and the July 20 election.

A detailed picture of the problem emerged on July 8 and 9, 2004, when the Elections Division of the Office of the Secretary of State of Georgia, at the request of the United States, conducted an electronic mail survey of absentee ballot mailings by all 159 Georgia counties for the July 20 primary. The survey results revealed the following:

(A) Of Georgia's 159 counties, 118 counties reported having absentee ballot applications from overseas voters on hand as of June 21, 2004, i.e., 29 days before the election. Twenty-nine (29) counties reported they had received no applications by June 21, 2004, and 12 other counties did not respond to the survey.

(B) Only 59--exactly half--of the 118 counties with overseas voters' ballot applications on hand by June 21, 2004, reported mailing absentee ballots to overseas voters on or before that date. Thirty (30) counties reported mailing absentee ballots to overseas voters between June 21 and 23, 2004, i.e., between 27 and 29 days before the election, and 12 counties reported mailing

-6-

absentee ballots to overseas voters between June 28 and July 8, 2004, i.e., between 12 and 22 days before the election. See Declaration of Stephen B. Pershing, Attachment 1 hereto, and Table of Georgia Elections Division Survey Results, July 8-9, pursuant to Fed. R. Evid. 1006, Exhibit A to Pershing Declaration.

The U.S. Department of Defense, through the Federal Voting Assistance Program ("FVAP"), is the primary administrator of UOCAVA.[2] The Federal Voting Assistance Program of the Department of Defense recommends that states allow 40 to 45 days for round trip mailing time for overseas ballots. See Declaration of J. Scott Wiedmann, Attachment 2 hereto, at 10. According to FVAP Deputy Director J. Scott Wiedmann, an interval of 30 days or fewer will almost certainly be insufficient for ballots sent from Georgia to overseas voters to be received and timely returned. Id. at ¶ 10-11. Even if overseas voters marked their ballots and placed them in return mail the day after they arrived, an interval of less than 30 days between mailing date and deadline for receipt would be insufficient for the round trip these ballots must make through international mail from Georgia county

---

[2] The Department of Defense has delegated its responsibilities for administering the Act to the Federal Voting Assistance Program. Department of Defense Directive 1000.4.

-7-

election officials to an overseas voter and back.

Based on the foregoing information, the United States attempted to resolve this matter without the need for a motion for emergency relief. However, counsel for the State and the United States were unable to agree on remedial measures, and the State declined to concur in the present motion for injunctive relief.

IV.   Argument: Preliminary Relief Should Be Ordered Without Delay

Federal courts, including the United States Court of Appeals for the Eleventh Circuit, traditionally have considered four factors in determining the propriety of granting preliminary relief, in the form of a temporary restraining order or of a preliminary injunction:

  (1)   a substantial likelihood of success on the merits;
  (2)   whether the movant will suffer irreparable injury unless the injunction is issued;
  (3)   whether the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and
  (4)   whether granting the injunction is in the public interest.

See, e.g., Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l., 238 F.3d 1300, 1308 (11th Cir. 2001); Siegel v. Lepore,

-8-

234 F.3d 1163 (11th Cir. 2000). The present circumstances demonstrate that all four factors are met, and that a temporary restraining order and preliminary injunction should be issued.

A.  It Is Highly Probable That The United States
    Will Succeed On The Merits

UOCAVA provides that military and civilian overseas voters have the right to participate in federal elections by absentee ballot. 42 U.S.C. 1973ff et seq. This federal right would be meaningless if state election officials could, without violating UOCAVA, fail to mail ballots to qualified overseas voters sufficiently in advance of the election to allow those voters to participate. The facts presented here demonstrate that qualified overseas voters, both military and civilian, will be unable to vote in this election because of the failure of election officials in Georgia to mail absentee ballots in time for the ballots to reach the voters and be timely returned.

The relief that the United States seeks under the Attorney General's UOCAVA enforcement power, see 42 U.S.C. § 1973ff-4, is sought in several forms that will work together to repair, insofar as possible, the harm done by the failure of Georgia counties to mail absentee ballots in time. The central component of that relief is a two-week extension of the deadline for receipt of absentee ballots from qualified overseas voters at the July 20 primary and any August 10 runoff, implemented in a manner

-9-

that will minimize any disturbance to Georgia's 2004 election schedule.

The number of absentee ballot applications known to be outstanding for this election is 1,972 statewide, out of a registered electorate of 3,841,858. See Table of Georgia Elections Division Survey Results, July 8-9, 2004 (Exhibit A to Pershing Decl.); Georgia Secretary of State voter registration figures by county, June 1, 2004, available at www.sos.state.ga.us/elections/voter_registration/county.htm (last visited July 13, 2004). Under the narrowly tailored relief the United States requests here, if an election result on July 20 is such that the number of outstanding absentee ballots could not mathematically affect the outcome, the State may immediately certify that result (subject to amendment or recertification to include any ballots accepted late under the Court's order) and proceed to prepare for the August 10 runoff if one is required. The same holds true for a runoff result on August 10: if the number of outstanding absentee ballots from overseas voters could not mathematically change the outcome of a race, that result may be certified, subject to amendment or recertification to add to each candidate's totals any votes accepted late under the Court's order.

Certification would only be delayed in the highly unlikely

event of an election so close that the small number of absentee ballots from UOCAVA-protected overseas voters in fact could change the outcome, in which case failing to count those votes would not only violate the rights that UOCAVA so clearly protects, but could tend to undermine the legitimacy of the election. See Bush v. Hillsborough County Canvassing Board, 123 F. Supp. 2d 1305, 1317-18 (N.D. Fla. 2000); see also Roe v. Alabama, 43 F.3d 574 (11th Cir. 1995) (adjudicating role of contested absentee ballots in disputed statewide election).

Federal courts have ordered extensions of ballot receipt deadlines as relief against other states on numerous occasions since UOCAVA took effect in 1988, most recently in United States v. Pennsylvania, No. 1:04-CV-0830 (M.D. Pa. April 16, 2004)(Attachment 3 hereto)(granting TRO and preliminary injunction to remedy late mailing by Pennsylvania counties for primary election of April 27, 2004). See also United States v. Pennsylvania, No. 88-0610 (M.D. Pa., April 25, 1988)(Attachment 4 hereto)(granting TRO and preliminary injunction extending by 14 days the deadline for receipt of absentee ballots from qualified overseas voters); United States v. State of Texas, No. A-02-CA-195 (W.D. Tex., Mar. 25, 2002) (grant of TRO and preliminary injunction) (Attachment 5 hereto); United States v. State of Michigan, No. 1:00CV583 (W.D. Mich., Aug. 8, 2000)(consent

-11-

decree)(Attachment 6 hereto).

In addition to an extension of the ballot receipt deadlines
for this election, the United States also seeks an order
requiring Georgia election officials to accept the federal write-
in absentee ballot, to permit accelerated methods for qualified
voters to return ballots, and to give various types of notice of
the relief obtained in this suit. These measures are narrowly
tailored and reasonably calculated to make whole the voters
affected by the UOCAVA violations complained of.[3]

_____

[3] The alternative methods for return of absentee ballots,
and the various forms of notice sought to be ordered, are
designed to allow the fullest practicable opportunity for voters
protected by UOCAVA to cast ballots in this election given the
failure of Georgia to fulfill its UOCAVA obligations. A number
of states already allow for the accelerated return of ballots by
facsimile machine, a reasonable and low-cost alternative to
relying on the uncertain international and U.S. military mail
system given the short time available. See Declaration of J.
Scott Wiedmann, Attachment 2 hereto, at 8-9. Facsimile
transmission could easily be used in concert with overnight mail
(provided it was at the defendants' expense) to accord meaningful
relief to many of Georgia's overseas voters at this election.

-12-

present motion would be the administrative inconvenience of notifying affected voters of the Court's order, extending the deadline for receipt and counting of certain absentee ballots (and potentially amending election certifications to include those ballots in the vote totals), accepting federal write-in absentee ballots, allowing for accelerated return of ballots by electronic means, and the expense of express mailing. Balanced against these modest administrative and financial costs is the injury, irreparable by definition, that flows from the denial of qualified citizens' right to vote, one of the most fundamental and cherished rights enshrined in our Constitution.

In the highly unlikely event that an election result were so close on July 20 or August 10 that the outcome turned on the number of outstanding absentee ballots from UOCAVA-covered overseas voters, the federally protected right of those voters to participate would be vitiated at the moment of its acutest significance if their votes were not counted. In the far likelier event that election margins on June 20 or August 10 are greater than can be affected by overseas voters' absentee ballots, counting them in the vote totals by amending certifications after the fact where necessary will be a slight burden indeed.

-14-

D.    The Public Interest Favors Immediate Relief

In enacting UOCAVA, Congress has determined that the public interest is served by guaranteeing American citizens who are overseas, either in a civilian or military capacity, the right to participate in federal elections.  The relief sought here consists of reasonable and narrowly tailored measures that vindicate qualified Georgia voters' UOCAVA rights without abridging the rights of other voters.  The measures urged by the United States in this motion will help ensure that every lawful vote will be counted, and will serve as fully as possible both the State's interests in orderly election administration and the public interest in upholding the integrity of the election process.

V.   Conclusion

For the foregoing reasons, the Court should grant the United States' motion and enter the attached proposed Order granting immediate relief for the violations of UOCAVA described herein.

-15-

B.   Irreparable Harm Will Result If The State Is Not
     Required To Remedy Immediately The Violations
     Complained Of

At issue in this suit is the right of overseas citizens, many
of whom are members of the U.S. Armed Forces deployed on dangerous
missions in their country's service, to participate in elections
for federal offices.  Those persons will be irreparably denied
that right if even a few more days go by without an effective
remedy for the late mailing of their absentee ballots.  A lost
vote cannot be recovered after the election.  The circumstances
pose precisely the irreparable injury that should meet the test
for injunctions in this Circuit.  See Delta, 238 F.3d at 1308.

C.   The Harm to Defendants From Preliminary Relief Is
     Minimal, And Is Far Outweighed By The Harm That Denial
     Of Relief Would Cause To Protected Voters

To grant a temporary restraining order and preliminary
injunction in this case will impose minimal hardship on the
defendants.  No hardship to the State can be said to result from
the overriding of Georgia election law provisions that work a
deprivation of rights guaranteed by UOCAVA.  In Bush v.
Hillsborough County Canvassing Board, 123 F. Supp. 2d 1305 (N.D.
Fla. 2000), the district court held that any state law requirement
that conflicts with mandatory provisions of UOCAVA is preempted
and invalid.  Id. at 1314.

Thus the sole burdens on the State from a grant of the

Respectfully submitted,

SALLY QUILLIAN YATES
Acting United States
Attorney
AMY BERNE
Assistant United States
Attorney
Ga. Bar No. 006670
600 United States Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
(404) 581-6261
(404) 581-6181 (fax)

JOSEPH D. RICH
REBECCA J. WERTZ
STEPHEN B. PERSHING
AMY H. ZUBRENSKY
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.,
Room 7254-NWB
Washington, D.C. 20530
(202) 305-1238
(202) 307-3961 (fax)

Dated: __13 July 04__

ATTACHMENT LIST

Declaration of Stephen B. Pershing                Attachment 1

    Table of Georgia Elections Division
    Survey Results, July 8-9, 2004                Exhibit A to
                                      Attachment 1

Declaration of J. Scott Wiedmann                 Attachment 2

United States v. Commonwealth of Pennsylvania,
No. 1:04-CV-0830 (M.D. Pa. April 16, 2004)       Attachment 3

United States v. Commonwealth of Pennsylvania,
No. 88-0610 (M.D. Pa., April 25, 1988)           Attachment 4

United States v. State of Texas,
No. A-02-CA-195 (W.D. Tex., Mar. 25, 2002)       Attachment 5

United States v. State of Michigan,
No. 1:00CV583 (W.D. Mich., Aug. 8, 2000)         Attachment 6

United States v. State of Georgia

# Attachment 1

## to

# Memorandum in Support of United States' Motion for Temporary Restraining Order and Preliminary Injunction

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Atlanta Division

UNITED STATES OF AMERICA,                )
                                         )
                Plaintiff,               )
                                         )
     v.                                  )     Civil Action No.
                                         )
THE STATE OF GEORGIA and                 )
CATHY COX, Secretary of State            )
of Georgia,                              )
                                         )
                Defendants.              )
                                         )

## DECLARATION OF STEPHEN B. PERSHING

1. My name is Stephen B. Pershing. I am a trial attorney
in the Voting Section, Civil Rights Division, United States
Department of Justice. I live in Washington, D.C. I am a member
of the bar of Virginia, and of the bars of various federal
district and circuit courts and the Supreme Court of the United
States. I am counsel to the United States in the above-captioned
civil action under the Uniformed and Overseas Citizens Absentee
Voting Act, 42 U.S.C. §§ 1973ff to 1973ff-6 ("UOCAVA"). I make
this declaration under 28 U.S.C. § 1746.

2. On July 9, 2004, the Voting Section was notified by the
Federal Voting Assistance Program ("FVAP") of the United States
Department of Defense that one or more Georgia counties had
mailed absentee ballots to UOCAVA-covered overseas voters with
fewer than 30 days remaining before the federal primary election

of July 20, 2004.

3. On July 8 and 9, 2004, at the request of the United States, the Elections Division of the Office of the Georgia Secretary of State ("Elections Division") queried all 159 Georgia counties via electronic mail as to the dates on which they mailed absentee ballots to overseas voters for this election.

4. Attached as Exhibit A to this Declaration is a table supplied to the United States by the Elections Division on July 9, 2004, showing the results of that survey. I was advised by Linda Beazley, director of the Elections Division, that the contents of the table are as follows:

- The left vertical column on the table shows the county name.

- The middle vertical column shows the number of absentee ballot applications reported received by that county by June 21, 2004, from overseas voters only (i.e., not including military voters located within the United States or its territories).

- The right vertical column shows the date on which that county reported completing the mailing of absentee ballots to those overseas voters.

5. This table is offered for admission into the record of this case as a summary within the meaning of Fed. R. Evid. 1006.

6. The table reveals that:

(A) Of Georgia's 159 counties, 118 counties reported having absentee ballot applications from overseas voters on hand as of

June 21, 2004, *i.e.*, 29 days before the election. Twenty-nine
(29) counties reported they had received no applications by June
21, 2004, and 12 other counties did not respond to the survey.

(B) Only 59--exactly half--of the 118 counties with overseas
voters' ballot applications on hand by June 21, 2004, reported
mailing absentee ballots to overseas voters on or before that
date. Thirty (30) counties reported mailing absentee ballots to
overseas voters between June 21 and 23, 2004, *i.e.*, between 27
and 29 days before the election, and 12 counties reported mailing
absentee ballots to overseas voters between June 28 and July 8,
2004, *i.e.*, between 12 and 22 days before the election.

I declare under penalty of perjury that the foregoing is
true and correct to the best of my knowledge and belief.

_____
Stephen B. Pershing

Dated:  July 13, 2004

United States v. State of Georgia

# Attachment 2

## to

## Memorandum in Support of United States' Motion for Temporary Restraining Order and Preliminary Injunction

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Atlanta Division

UNITED STATES OF AMERICA,  )
                           )
            Plaintiff,     )
                           )
    v.                     )     Civil Action No.
                           )
THE STATE OF GEORGIA;      )
and CATHY COX, Secretary of State )
of Georgia,                )
                           )
            Defendants.    )
_____)


## DECLARATION OF J. SCOTT WIEDMANN


1.  My name is J. Scott Wiedmann. I reside in Clifton,
Virginia. I am Deputy Director of the Federal Voting Assistance
Program ("FVAP" or "the Program") in the United States Department
of Defense, and have served in that capacity since 1999. I make
this Declaration under 28 U.S.C. § 1746.

2.  Acting pursuant to the Uniformed and Overseas Citizens
Absentee Voting Act of 1986, 42 U.S.C. § 1973ff et seq.
("UOCAVA"), the President of the United States on June 8, 1988,
in Executive Order 12642, designated the Secretary of Defense to
coordinate and facilitate all actions required to discharge
federal responsibilities under the Act. The Secretary of
Defense, in DoD Directive 1000.4, has assigned his authority

under Executive Order 12642 to the Director of the Federal Voting Assistance Program.

3.    The Federal Voting Assistance Program, through consultations with states and the appropriate departments and agencies of the federal government, and through the dissemination of information to potential absentee voters, has sought to assist persons, both military and civilian, who are protected by UOCAVA and who seek to vote by absentee ballot in federal elections. Pursuant to the provisions of this Act, the Program obtains information on absentee registration and voting procedures in each state, and every two years publishes that information in a handbook, entitled Voting Assistance Guide, which is distributed to American citizens around the world.  The Program also reviews state procedures to determine if they pose any impediment to persons seeking to vote absentee.  When problems are discovered, the Program frequently has consulted with the states and suggested changes that might be made to promote greater participation in elections.  On occasion, the Program has recommended to the Department of Justice that suit be brought to protect the right to vote guaranteed by the Act.  The Program has worked with the United States Postmaster General and the Military Postal Service to assure the availability of expedited mail delivery of absentee balloting material.  The Program also acts as an ombudsman for voters and local election officials when

problems arise. The Program also directs the voting assistance
actions of military commanders through senior military voting
officers of general or flag rank in each military Service.

4. One aspect of state procedure with respect to absentee
voting that the Federal Voting Assistance Program reviews is
whether state election officials mail absentee ballots out at a
point in time sufficiently preceding election day to permit
absentee voters protected by the Act reasonable time in which to
receive, vote, and return their ballots before the deadline for
receipt.

5. In my capacity as Deputy Director of the Program, I am
aware of information obtained by past Directors of the Program
from the United States Postal Service and the Military Postal
Service Agency to assist in determining the round trip mailing
time that states should allow overseas absentee voters.

6. According to information provided to the Federal Voting
Assistance Program by the United States Postal Service in May,
1991, pursuant to the request of Henry Valentino, former Director
of the Program, a reasonable benchmark worldwide for one-way
mailing time for international mail is seven to ten days. The
Postal Service has not established a service standard for
international mail because of the varying regulations and
procedures which exist in different foreign countries.

7. In my capacity as Deputy Director of the Program, I have

become familiar with the operations of the Military Postal Service Agency. The military mail services (known as the Army Post Office, or APO, and the Fleet Post Office, or FPO) are utilized almost exclusively by members of the military stationed overseas. These mail services operate as follows: mail originating in the United States that is destined for overseas military post offices travels through the regular domestic mails to a gateway or dispatch center where it enters the APO or FPO system. There it is sorted by ZIP code, packaged in letter trays for overseas delivery, and then flown to a pre-designated overseas commercial airport for transfer to a terminal or center. The terminal or center sorts and distributes the mail to a military post office at an installation or routes the mail to a ship's scheduled port of call or to a deployed unit. Mail originating overseas destined for the United States travels the same route in reverse. The service standards established by the Military Postal Service Agency for one-way mail may be summarized as follows:

   a.   To high density locations with frequent airlifts (such as most locations in Germany and Japan): 7 to 8 days.

   b.   To remote locations (areas with infrequent airlifts): 7 to 14 days.

   c.   To mobile units and ships: 10 to 14 days.

In my capacity as Deputy Director, Federal Voting Assistance

Program, I am further aware of information obtained by former
Program Director Valentino from the Military Postal Service
Agency that to arrive at a round trip figure, it is necessary not
only to double the number of days set forth above, but also to
add one day for time zone changes and administrative requirements
and additional time for mail to be distributed to the individual
(one to two days in most cases, up to 14 days in remote
locations).

    8.  I am aware that Military Postal Service Agency policy
provides, with respect to the mailing of election material
through the military postal services, that it is appropriate to
allow at least 30 days for the round trip from the dispatch
center in the United States to the individual located overseas
and back to the dispatch center.

    9.  I am aware of a survey conducted by the Federal Voting
Assistance Program in 1989 concerning mail transit time from U.S.
cities to military APO and FPO addresses and to international
addresses.  This survey indicated a range of a minimum of 11 days
round trip transit time to a maximum of 44 days round trip
transit time with the average transit time of 18 days.

    10.  On the basis of the information set forth above, the
Federal Voting Assistance Program recommends that to ensure that
the great majority of voters overseas have a reasonable
opportunity to return their ballots in a timely manner, states

D.    The Public Interest Favors Immediate Relief

In enacting UOCAVA, Congress has determined that the public interest is served by guaranteeing American citizens who are overseas, either in a civilian or military capacity, the right to participate in federal elections.  The relief sought here consists of reasonable and narrowly tailored measures that vindicate qualified Georgia voters' UOCAVA rights without abridging the rights of other voters.  The measures urged by the United States in this motion will help ensure that every lawful vote will be counted, and will serve as fully as possible both the State's interests in orderly election administration and the public interest in upholding the integrity of the election process.

V.    Conclusion

For the foregoing reasons, the Court should grant the United States' motion and enter the attached proposed Order granting immediate relief for the violations of UOCAVA described herein.

-15-

Respectfully submitted,

SALLY QUILLIAN YATES
Acting United States
Attorney
AMY BERNE
Assistant United States
Attorney
Ga. Bar No. 006670
600 United States Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
(404) 581-6261
(404) 581-6181 (fax)

JOSEPH D. RICH
REBECCA J. WERTZ
STEPHEN B. PERSHING
AMY H. ZUBRENSKY
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.,
Room 7254-NWB
Washington, D.C. 20530
(202) 305-1238
(202) 307-3961 (fax)

Dated: ___13 July 04___

ATTACHMENT LIST

Declaration of Stephen B. Pershing                    Attachment 1

    Table of Georgia Elections Division
    Survey Results, July 8-9, 2004           Exhibit A to
                                              Attachment 1

Declaration of J. Scott Wiedmann                      Attachment 2

United States v. Commonwealth of Pennsylvania,
No. 1:04-CV-0830 (M.D. Pa. April 16, 2004)           Attachment 3

United States v. Commonwealth of Pennsylvania,
No. 88-0610 (M.D. Pa., April 25, 1988)               Attachment 4

United States v. State of Texas,
No. A-02-CA-195 (W.D. Tex., Mar. 25, 2002)           Attachment 5

United States v. State of Michigan,
No. 1:00CV583 (W.D. Mich., Aug. 8, 2000)             Attachment 6

United States v. State of Georgia

# Attachment 1

## to

## Memorandum in Support of United States' Motion for Temporary Restraining Order and Preliminary Injunction

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Atlanta Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| THE STATE OF GEORGIA and | ) | |
| CATHY COX, Secretary of State | ) | |
| of Georgia, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF STEPHEN B. PERSHING

1. My name is Stephen B. Pershing. I am a trial attorney in the Voting Section, Civil Rights Division, United States Department of Justice. I live in Washington, D.C. I am a member of the bar of Virginia, and of the bars of various federal district and circuit courts and the Supreme Court of the United States. I am counsel to the United States in the above-captioned civil action under the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. §§ 1973ff to 1973ff-6 ("UOCAVA"). I make this declaration under 28 U.S.C. § 1746.

2. On July 9, 2004, the Voting Section was notified by the Federal Voting Assistance Program ("FVAP") of the United States Department of Defense that one or more Georgia counties had mailed absentee ballots to UOCAVA-covered overseas voters with fewer than 30 days remaining before the federal primary election

of July 20, 2004.

3. On July 8 and 9, 2004, at the request of the United States, the Elections Division of the Office of the Georgia Secretary of State ("Elections Division") queried all 159 Georgia counties via electronic mail as to the dates on which they mailed absentee ballots to overseas voters for this election.

4. Attached as Exhibit A to this Declaration is a table supplied to the United States by the Elections Division on July 9, 2004, showing the results of that survey. I was advised by Linda Beazley, director of the Elections Division, that the contents of the table are as follows:

- The left vertical column on the table shows the county name.

- The middle vertical column shows the number of absentee ballot applications reported received by that county by June 21, 2004, from overseas voters only (i.e., not including military voters located within the United States or its territories).

- The right vertical column shows the date on which that county reported completing the mailing of absentee ballots to those overseas voters.

5. This table is offered for admission into the record of this case as a summary within the meaning of Fed. R. Evid. 1006.

6. The table reveals that:

(A) Of Georgia's 159 counties, 118 counties reported having absentee ballot applications from overseas voters on hand as of

June 21, 2004, _i.e._, 29 days before the election.  Twenty-nine (29) counties reported they had received no applications by June 21, 2004, and 12 other counties did not respond to the survey.

(B) Only 59--exactly half--of the 118 counties with overseas voters' ballot applications on hand by June 21, 2004, reported mailing absentee ballots to overseas voters on or before that date.  Thirty (30) counties reported mailing absentee ballots to overseas voters between June 21 and 23, 2004, _i.e._, between 27 and 29 days before the election, and 12 counties reported mailing absentee ballots to overseas voters between June 28 and July 8, 2004, _i.e._, between 12 and 22 days before the election.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Stephen B. Pershing

Dated:   July 13, 2004

United States v. State of Georgia

# Attachment 2

## to

## Memorandum in Support of United States' Motion for Temporary Restraining Order and Preliminary Injunction

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Atlanta Division

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )
    v.                              )    Civil Action No.
                                    )
THE STATE OF GEORGIA;               )
and CATHY COX, Secretary of State   )
of Georgia,                         )
                                    )
            Defendants.             )
_____)

## DECLARATION OF J. SCOTT WIEDMANN

1.  My name is J. Scott Wiedmann.  I reside in Clifton,
Virginia.  I am Deputy Director of the Federal Voting Assistance
Program ("FVAP" or "the Program") in the United States Department
of Defense, and have served in that capacity since 1999.  I make
this Declaration under 28 U.S.C. § 1746.

2.  Acting pursuant to the Uniformed and Overseas Citizens
Absentee Voting Act of 1986, 42 U.S.C. § 1973ff et seq.
("UOCAVA"), the President of the United States on June 8, 1988,
in Executive Order 12642, designated the Secretary of Defense to
coordinate and facilitate all actions required to discharge
federal responsibilities under the Act.  The Secretary of
Defense, in DoD Directive 1000.4, has assigned his authority

under Executive Order 12642 to the Director of the Federal Voting
Assistance Program.

3.   The Federal Voting Assistance Program, through
consultations with states and the appropriate departments and
agencies of the federal government, and through the dissemination
of information to potential absentee voters, has sought to assist
persons, both military and civilian, who are protected by UOCAVA
and who seek to vote by absentee ballot in federal elections.
Pursuant to the provisions of this Act, the Program obtains
information on absentee registration and voting procedures in
each state, and every two years publishes that information in a
handbook, entitled Voting Assistance Guide, which is distributed
to American citizens around the world.   The Program also reviews
state procedures to determine if they pose any impediment to
persons seeking to vote absentee.   When problems are discovered,
the Program frequently has consulted with the states and
suggested changes that might be made to promote greater
participation in elections.   On occasion, the Program has
recommended to the Department of Justice that suit be brought to
protect the right to vote guaranteed by the Act.   The Program has
worked with the United States Postmaster General and the Military
Postal Service to assure the availability of expedited mail
delivery of absentee balloting material.   The Program also acts
as an ombudsman for voters and local election officials when

problems arise. The Program also directs the voting assistance actions of military commanders through senior military voting officers of general or flag rank in each military Service.

4. One aspect of state procedure with respect to absentee voting that the Federal Voting Assistance Program reviews is whether state election officials mail absentee ballots out at a point in time sufficiently preceding election day to permit absentee voters protected by the Act reasonable time in which to receive, vote, and return their ballots before the deadline for receipt.

5. In my capacity as Deputy Director of the Program, I am aware of information obtained by past Directors of the Program from the United States Postal Service and the Military Postal Service Agency to assist in determining the round trip mailing time that states should allow overseas absentee voters.

6. According to information provided to the Federal Voting Assistance Program by the United States Postal Service in May, 1991, pursuant to the request of Henry Valentino, former Director of the Program, a reasonable benchmark worldwide for one-way mailing time for international mail is seven to ten days. The Postal Service has not established a service standard for international mail because of the varying regulations and procedures which exist in different foreign countries.

7. In my capacity as Deputy Director of the Program, I have

become familiar with the operations of the Military Postal
Service Agency. The military mail services (known as the Army
Post Office, or APO, and the Fleet Post Office, or FPO) are
utilized almost exclusively by members of the military stationed
overseas. These mail services operate as follows: mail
originating in the United States that is destined for overseas
military post offices travels through the regular domestic mails
to a gateway or dispatch center where it enters the APO or FPO
system. There it is sorted by ZIP code, packaged in letter trays
for overseas delivery, and then flown to a pre-designated
overseas commercial airport for transfer to a terminal or center.
The terminal or center sorts and distributes the mail to a
military post office at an installation or routes the mail to a
ship's scheduled port of call or to a deployed unit. Mail
originating overseas destined for the United States travels the
same route in reverse. The service standards established by the
Military Postal Service Agency for one-way mail may be summarized
as follows:

   a.   To high density locations with frequent airlifts (such
        as most locations in Germany and Japan): 7 to 8 days.
   b.   To remote locations (areas with infrequent airlifts): 7
        to 14 days.
   c.   To mobile units and ships: 10 to 14 days.
In my capacity as Deputy Director, Federal Voting Assistance

Program, I am further aware of information obtained by former Program Director Valentino from the Military Postal Service Agency that to arrive at a round trip figure, it is necessary not only to double the number of days set forth above, but also to add one day for time zone changes and administrative requirements and additional time for mail to be distributed to the individual (one to two days in most cases, up to 14 days in remote locations).

8.  I am aware that Military Postal Service Agency policy provides, with respect to the mailing of election material through the military postal services, that it is appropriate to allow at least 30 days for the round trip from the dispatch center in the United States to the individual located overseas and back to the dispatch center.

9.  I am aware of a survey conducted by the Federal Voting Assistance Program in 1989 concerning mail transit time from U.S. cities to military APO and FPO addresses and to international addresses.  This survey indicated a range of a minimum of 11 days round trip transit time to a maximum of 44 days round trip transit time with the average transit time of 18 days.

10.  On the basis of the information set forth above, the Federal Voting Assistance Program recommends that to ensure that the great majority of voters overseas have a reasonable opportunity to return their ballots in a timely manner, states

allow, as an ideal, 40 to 45 days for round trip mailing time when sending absentee ballots to such voters. The Program has consulted with states, urging them, where necessary, to change their procedures to permit this mailing time to be achieved.

11. I am familiar with an Audit Report recently published by the Office of the Inspector General, Department of Defense, entitled "Overseas Absentee Ballot Handling in DOD" (Report No. D-2001-145, June 22, 2001), and its contents. I am aware that this report confirms a fact on which the Program has long relied, that 30 days is a reasonable benchmark for round trip transmission of ballot materials from a continental U.S. state to an overseas destination, and that mailing ballots 45 days before an election would help ensure that all absentee voters would have sufficient time to process their ballots even if the mail system does not work as designated.

12. Section 103 of UOCAVA, 42 U.S.C. § 1973ff-2, provides for a standard federal write-in absentee ballot ("FWAB") to be available to military and overseas voters in the event that regular absentee ballots from those voters' home jurisdictions are not available by the time the voters must return them. Under UOCAVA, states are required to accept the FWAB in lieu of an official absentee ballot from qualified overseas voters in federal general elections. Although the requirement does not extend to federal primary elections or to any state or local

elections, I am aware that a number of states accept FWABs for federal primary elections. The FWAB is kept in stock at United States military installations and diplomatic facilities around the world. The Federal Voting Assistance Program regularly uses its channels of electronic and other communication with military and overseas voters to urge them to vote by FWAB if their absentee ballots do not arrive by mail with a reasonable time remaining to return them and have them counted. Also, FVAP regularly communicates with military and overseas voters to alert them to sources of information on the identity of candidates for federal office in situations where voters may find it necessary to use the FWAB in lieu of official absentee ballots from their home jurisdictions.

13. In recognition of the importance of the opportunity of voters covered by UOCAVA to vote and have their ballots counted, FVAP regularly assists such voters in accelerating the return of their voted ballots beyond what is possible with traditional mail service. FVAP regularly coordinates the use of facsimile transmission and electronic mail to this end in individual cases. FVAP has the technical capability to receive voted absentee ballots from anywhere in the world by electronic means, and to forward them electronically to local election officials anywhere in the United States in a voter's behalf, with a statement by the voter waiving the ballot privacy necessarily surrendered in this

process.  FVAP also works with local election officials across the United States to collect electronic images of official ballots that can be transmitted to voters via electronic mail, printed by voters as original documents, voted, and returned to local election officials--directly or through FVAP--by traditional or express mail or via electronic means.

   I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.
   Executed on July 13, 2004.

J. Scott Wiedmann

<u>United States</u> v. <u>State of Georgia</u>

# Attachment 3

## to

# Memorandum in Support of United States' Motion for Temporary Restraining Order and Preliminary Injunction

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,    :
                Plaintiff    :
                        :    CIVIL ACTION NO. 1:CV-04-830
     v.    :
                        :    (Judge Kane)
THE COMMONWEALTH OF    :
PENNSYLVANIA,    :
EDWARD G. RENDELL, Governor    :
of the Commonwealth of Pennsylvania;    :
and PEDRO A. CORTES, Secretary    :
of the Commonwealth of Pennsylvania,    :
               Defendants    :

## ORDER

This matter is before the Court on motion of the Government for Temporary Restraining Order and Preliminary Injunction directing that the Commonwealth of Pennsylvania take steps to ensure that American citizens abroad receive the rights guaranteed by the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. §§ 1973ff–1973ff-6 ("UOCAVA" or "the Act").

The Act provides, inter alia, that "absentee uniformed services voters" and "overseas voters" (as defined by the Act) (hereinafter "overseas voters") shall be permitted "to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. § 1793ff-1. Plaintiff seeks injunctive relief under the Act to assure that overseas voters who (a) are qualified to vote in the April 27, 2004, General Primary Election in the Commonwealth of Pennsylvania, and (b) submitted to appropriate county elections officials applications for absentee ballots on or before Monday, March 29, 2004, will be afforded a reasonable opportunity to submit their absentee ballots in a manner that is deemed timely by Pennsylvania officials and to have

those ballots canvassed and counted in accordance with Pennsylvania law for the Federal offices that appear on the absentee voters' General Primary ballot.

As a State, Defendant Commonwealth of Pennsylvania must comply with the duties imposed on the States as required by the Act. Defendant Pedro A. Cortes, the Secretary of the Commonwealth of Pennsylvania, is the administrative head of the Single State Office – the Pennsylvania Department of State – that has been designated by the Commonwealth of Pennsylvania under § 102(b)(1) of the Act (as amended by the Help America Vote Act of 2002). 42 U.S.C. § 1973ff-1. By statute, the Pennsylvania Legislature has assigned the Secretary of the Commonwealth certain responsibilities that are relevant to Pennsylvania's compliance with the Act. However, in its implementation of the Commonwealth of Pennsylvania's responsibilities under the Act, the General Assembly of the Commonwealth by statute has assigned many responsibilities necessary for compliance with the Act to the 67 County Boards of Elections. See generally 25 Pa. Stat. Ann.§§ 3146.1-3146.9 (West 1994 & Supp. 2003) (Article XIII of the Pennsylvania Election Code – relating to voting by qualified absentee electors).

In determining whether to grant a motion seeking emergency injunctive relief, this Court must consider the following four factors: (1) the likelihood that the applicant will prevail on the merits; (2) the extent to which the movant is being irreparably harmed by the complained of conduct; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest. S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992). The moving party bears the burden of demonstrating these factors. Instant Air Freight v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989). The

2

Court should grant injunctive relief only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987). Moreover, injunctive relief must be framed to remedy the harm claimed by the party. Hartford-Empire Co. v. United States, 323 U.S. 386, 410 (1945). An injunction must be narrowly tailored to remedy the specific harm shown. Davis v. Romney, 490 F.2d 1360, 1370 (3d Cir. 1974); see also Tuttle v. Arlington City Sch. Bd., 195 F.3d 698, 708 (4th Cir. 1999) ("An injunction should be tailored to restrain no more than what is reasonably required to accomplish its ends . . . . Although injunctive relief should be designed to grant the full relief needed to remedy the injury to the prevailing party, it should not go beyond the extent of the established violation.") (citation omitted).

There can be no doubt that Plaintiff is entitled to injunctive relief. Plaintiff is likely to prevail on the merits of its claim that the Commonwealth is in violation of UOCAVA. Plaintiff has established that county election officials have failed in their duty to timely forward absentee ballots to citizens abroad including the men and women serving our nation's military. Plaintiff established that overseas ballots require on average 30 days for transit to and from the absentee voter. Yet, a survey by the Pennsylvania Department of State's Bureau of Commissions, Elections and Legislation, conducted between April 7 and April 12, 2004 of all 67 county election offices, discloses that many counties have not satisfied their important legal obligations to forward absentee ballots so that they are timely received. Time lines are especially critical in the case of military voters. Based on this, Plaintiff has shown reasonable grounds to believe that this failure constitutes a violation of the Act.

Plaintiff has established the irreparable harm necessary to receive preliminary injunctive relief. Under Pennsylvania law, absentee ballots received after 5:00 P.M. Eastern Time on the Friday before

3

the election may not be counted with respect to any office. 25 Pa. Stat. Ann. § 3146.6(a) (West Supp. 2003). Some overseas voters who applied for an absentee ballot on or before March 29, 2004, and who were not provided an absentee ballot in the time prescribed by Pennsylvania law, see 25 Pa. Stat. Ann. § 3146.5(a) (West 1994), reside or are physically situated at locations so remote from their counties of residence in Pennsylvania that they likely will be unable to return an absentee ballot in time or to cast a vote in this General Primary unless afforded relief from the April 23, 2004, statutory deadline for the receipt of absentee ballots. See 25 Pa. Stat. Ann. § 3146.6(a) (West Supp. 2003).

Further, the public interest favors the grant of an injunction and the expense and burden to Defendants imposed by the relief ordered is far outweighed by the importance of protecting and enforcing the right of every eligible Pennsylvanian to vote. Thus, Plaintiff is entitled to injunctive relief.

Because injunctive relief is an extraordinary remedy, it must be granted sparingly, with the Court exercising its powers only as necessary to remedy the established harm. Hartford-Empire Co., 323 U.S. at 410. It is Plaintiff who bears the burden of establishing entitlement to the relief it seeks. Instant Air Freight, 882 F.2d at 800. The Court is satisfied by the testimony and exhibits that the rights established by the UOCAVA can be enforced with a four prong order: the deadline for the acceptance of absentee ballots will be extended to May 17, 2004, federal write-in ballots will be accepted, the Commonwealth will be required to provide and fund the overnight mailing of overseas absentee ballots, and the Commonwealth will notify the affected voting public of these accommodations.

The Court has considered Plaintiff's argument that the Commonwealth should be required to permit absentee voting by fax or electronic mail. Although counsel for the Government may be correct that these procedures "make sense" in this electronic age, and that they are used safely in forty-nine

4

other states, Plaintiff has not established entitlement to this form of relief. An order requiring these new forms of voting would involve this Court devising and superimposing it's own election scheme on a complex legislatively sanctioned system spread across sixty seven diverse counties. The Government has produced no evidence that this form of extraordinary relief is necessary to ensure the UOCAVA rights of Pennsylvania's overseas voters are protected. Counsel speculated that there may be some military voters for whom even traditional mail is inaccessible. If this is so, the Government has not satisfied its burden of producing evidence to support this contention. Indeed, the Government's sole witness has explained that every military unit is assigned a voting officer charged with protecting the precious right of every man and woman serving our nation in these difficult times.

## ACCORDINGLY, IT IS ORDERED THAT:

1. As a remedy to assure the rights of overseas voters who are protected by the Act, the Secretary of the Commonwealth shall take all reasonable steps necessary to direct the County boards of elections to accept absentee ballots cast for federal offices included on the April 27, 2004 primary election by overseas voters as defined by the Act as timely received, as long as they are received by the appropriate county board of elections no later than 5 p.m. on Monday, May 17, 2004, notwithstanding the deadline prescribed by 25 Pa. Stat. Ann. § 3145.6(a).

2. The Secretary of the Commonwealth shall further direct all County boards of elections to accept any vote for federal office in the April 27, 2004 primary election that is received on a federal write-in absentee ballot.

3. To facilitate a timely return of the ballots, the Commonwealth shall provide overseas voters with

5

the opportunity to return ballots by overnight delivery, the expense of which shall be borne by the Commonwealth.

4. For those absentee ballots received from the overseas voters, the Secretary of the Commonwealth shall take all reasonable steps necessary to direct the County boards of elections to canvass the absentee ballots in accordance with Pennsylvania law and to count the valid votes cast for federal offices only, those determined by the board of elections to be valid absentee ballots under Pennsylvania law.

5. No absentee ballot cast by an absent uniformed services voter or overseas voter shall be valid unless it was cast by the voter no later than 8:00 p.m. eastern daylight time on Tuesday, April 27, 2004. For purposes of determining that an absentee ballot was timely cast, the Secretary of the Commonwealth shall take all reasonable steps necessary to direct the County boards of elections to accept the date affixed to the voter's signed declaration on the absentee ballot envelope prescribed by the Department of State or similar declaration, indicating that the voter had cast his or her absentee ballot on or before the date indicated by the voter in the declaration. The Secretary of the Commonwealth will direct the County boards of elections that proof of mailing or delivery of the completed absentee ballot on or before April 27, 2004, will not be required to demonstrate that the ballot was timely cast.

6. The Defendants shall immediately take all reasonable steps to give notice of the relief in this Order to all qualified overseas voters who have pending requests for absentee ballots in any Pennsylvania County. The efforts to publicize the Order shall include the following:

   a. The Secretary of the Commonwealth shall issue a press statement for immediate release

6

describing this Order, advising the press of its newsworthiness, and specifically giving members of the press a way to contact the Pennsylvania Department of State's Office of Communications and Press for answers to questions. This press release shall be posted immediately on the Department of State's website, and distributed as broadly and immediately as practicable, to wire services, to radio and television broadcast stations within the Commonwealth, to daily newspapers of general circulation in the Commonwealth, and to daily and non-daily newspapers in the Commonwealth that circulate among minority language readers.

b.    The Commonwealth shall place paid advertisements in multiple overseas publications and other periodicals likely to be accessible to United States military and non-military overseas voters and prepare public service announcements describing this Order for broadcast on radio and television networks, including but not limited to the United States Armed Forces Network.

c.    The Secretary of the Commonwealth will take all reasonable means to direct the County boards of elections to send, by first class U.S. mail, a communication describing this Order and the relief afforded therein to every overseas voter who requested an absentee ballot on or before March 29, 2004, and whose absentee ballot has not yet been received by the county board of elections. The notice shall be mailed to the address supplied by the voter for delivery of the absentee ballot. Any ballot mailed or otherwise transmitted to an overseas voter after the date of this Order shall include the notice described herein.

7

d. The United States and its agencies, including the Federal Voting Assistance Program ("FVAP"), shall take such action as might be necessary and appropriate to assist the Commonwealth with the notification of overseas voters of the extension of time for receipt of such ballots by elections officials of the Commonwealth, including posting announcements on internet sites likely to be visited by affected voters or persons who may have contact with those voters.

6. Within forty-five (45) days after May 17, 2004, the Secretary of the Commonwealth, in conjunction with the county election officials, shall file a report with the Department of Justice and with the Court which sets forth the following information regarding the federal offices included in the April 27, 2004 primary election:

a. The dates on which each of the 67 counties in the Commonwealth began and completed the process of mailing ballots to overseas voters;

b. The number of absentee ballots received by each county from overseas voters by 5:00 p.m. on May 17, 2004;

c. The number of absentee ballots, by county, received from such overseas voters and counted after the statutory deadline of 5:00 p.m. on April 23, 2004 but prior to the deadline proscribed in this Order;

d. The number of absentee ballots, by county, received from such overseas voters later than 5:00 p.m. on May 17, 2004, and for that reason not counted; and

8

e.     The number of federal write-in absentee ballots received by each county board of

elections.

S/Yvette Kane
Yvette Kane
United States District Judge

Date: April 16, 2004

9

United States v. State of Georgia


# Attachment 4

## to

# Memorandum in Support of United States' Motion for Temporary Restraining Order and Preliminary Injunction

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :
     :
     Plaintiff      :
     :
     vs.      :      CIVIL NO. 88-0610
     :      (Judge Kosik)
COMMONWEALTH OF PENNSYLVANIA;      :
ROBERT P. CASEY, GOVERNOR OF      :
THE COMMONWEALTH OF      :
PENNSYLVANIA; JAMES J.      :
HAGGERTY, SECRETARY OF THE      :
COMMONWEALTH OF PENNSYLVANIA      :
     :
     Defendants      :

FILED
SCRANTON

APR 25 1988

## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The court, having considered United States' application for a temporary restraining order and motion for preliminary injunction and the declarations filed in support thereof, and after service and notice to the Commonwealth of Pennsylvania, and having heard the counsel for the parties, hereby finds that:

1. Defendants have inadvertently failed to take such steps as are necessary to ensure that those individuals located outside the United States on April 26, 1988, primary election day, who are qualified to vote absentee pursuant to the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. §§1973ff, et seq., and who have applied in a timely fashion for absentee ballots, will be given a reasonable opportunity to execute and return such ballots before 5 p.m., Friday, April 22, 1988 (the deadline for receipt of such ballots).

2. There are reasonable grounds to believe that this

failure involves a violation of the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. §§1973ff, et seq.

3. The United States citizens located abroad who are eligible to vote in the Commonwealth of Pennsylvania under the aforementioned Act will be irreparably injured by this failure because these overseas citizens have not been given a reasonable opportunity to execute and return absentee ballots before 5 p.m., Friday, April 22, 1988, and, as such, they will effectively be denied their right to vote in the April 26, 1988 primary election.

4. Issuance of this Order will serve the public interest by protecting the right to vote of American citizens overseas, as that right is set forth in the Uniformed and Overseas Citizens Absentee Voting Act.

5. The degree of harm that may be suffered by defendants as a consequence of this Order is insignificant.

WHEREFORE, it is hereby ORDERED, ADJUDGED, and DECREED THAT:

[a] The defendants, their agents, officers, and employees, and all those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are restrained from failing or refusing to take such steps as are necessary to ensure that the following ballots for federal offices in the April 26, 1988 primary general election are counted as validly cast ballots: ballots cast pursuant to the Uniformed and Overseas Citizens Absentee Voting Act, by persons outside the United States on

AO 72A 8'
Rev. 8/82)

election day which are received on or before May 6, 1988, by the appropriate election officials, so long as the ballots would have been counted if they had been received by 5 p.m., Friday, April 22, 1988.

[b]  It is further ORDERED that while the aforementioned ballots cannot be challenged or counted at the appropriate election district level, as required by Title 25 P. S. Section 3146.8(a), they shall be available for challenges and counting by appropriate county boards of election at a time to be appointed by said boards as part of the regular public canvassing process provided for under Title 25 P. S. Section 3154 and in a manner similar to that provided for processing challenged absentee ballots under Section 3146.8(e); all to be accomplished without unnecessarily delaying certification of the election to the Secretary of the Commonwealth.

[c]  It is further ORDERED that defendants shall immediately inform all local election officials in the state of the provisions of this Order.

[d]  It is further ORDERED that the court sets Friday, April 29, 1988 at 10:30 a.m., United States Court, Scranton, Pennsylvania, as the time for the defendants' to be heard, if they deem necessary, to consider dissolution or modification.

[e]  It is further ORDERED that the defendants shall notify the Director of the United States Department of Defense's Federal Voting Assistance Program (FVAP) as soon as this Order has been signed and request that the FVAP take such action as is necessary to notify overseas voters of the extension of time for

receipt by Pennsylvania election officials of such ballots. The
state shall assist the FVAP in whatever way necessary to
publicize such extension of time.

Edwin M. Kosik
United States District Judge

DATED:   April 25, 1988

Certified from the record
Date ... 4-25-88
Donald R. Berry, Clerk
or ................
Deputy Clerk

AO 72A
(Rev. 8/82)

IN THE UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     )    CIVIL ACTION NO.
                               )
        v.                     )
                               )
COMMONWEALTH OF PENNSYLVANIA    )
et al.,                        )
                               )
                Defendants.    )
_____)

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 1988, I personally served the United States' Application for Temporary Restraining Order and Motion for Preliminary Injunction, a proposed Order, and a Memorandum in Support thereof with attached declarations, on the following attorneys for the defendants:

John Knorr
Assistant Attorney General
16th Floor
Strawberry Square
Harrisburg, Pennsylvania  17120

Velma Boozer
Office of the Secretary of the Commonwealth
305 North Office Building
Harrisburg, Pennslyvania  17120

BINNY MILLER
Attorney, Voting Section
Civil Rights Division
Department of Justice
P.O. Box 66128
Washington, D.C.  20035-6128
(202) 724-3109

United States v. State of Georgia

# Attachment 5

## to

# Memorandum in Support of United States' Motion for Temporary Restraining Order and Preliminary Injunction

Filed  3-25-02

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
Austin Division

Clerk, U. S. District Court
Western District of Texas
By _____
                    Deputy

UNITED STATES OF AMERICA,                    )
                                             )
                          Plaintiff,         )   Civil Action No.
                                             )   A-02-CA-195-SS
              v.                             )
                                             )
THE STATE OF TEXAS;                          )
GWYN SHEA, SECRETARY OF STATE                )
OF THE STATE OF TEXAS; TEXAS                 )
REPUBLICAN EXECUTIVE COMMITTEE;              )
SUSAN WEDDINGTON, Texas Republican           )
Executive Committee Chairman;                )
TEXAS DEMOCRATIC EXECUTIVE COMMITTEE;        )
MOLLY BETH MALCOLM, Texas Democratic         )
Executive Committee Chair;                   )
                                             )
                          Defendants.        )
_____  )

## (PROPOSED) ORDER

Before the Court is the Plaintiff's Complaint and Motion for
Temporary Restraining Order and Preliminary Injunction, filed on
March 22, 2002. Having considered Plaintiff's Complaint and
Motion, all of the papers filed in support of and in opposition
to the Motion, all evidentiary materials submitted by the
parties, and the interests of justice, the Court is prepared to
rule and hereby GRANTS Plaintiff's Motion for a Temporary
Restraining Order and Preliminary Injunction.

THEREFORE, consistent with the requirements of the Uniformed
and Overseas Citizens Absentee Voting Act,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.    Those persons outside the United States who are
qualified to vote in the State of Texas pursuant to the Uniformed

and Overseas Citizens Absentee Voting Act, 42 U.S.C. 1973ff-1, and who timely applied for absentee ballots from appropriate election officials for the April 9, 2002 federal primary runoff election, are permitted to use the Federal Write-in Absentee Ballot for voting in the April 9, 2002 federal primary runoff election.

    2.  The party defendants, Texas Republican Executive Committee, Susan Weddington, Texas Democratic Executive Committee, and Molly Beth Malcolm, shall take all steps necessary to ensure that appropriate election officials count as validly cast ballots those Federal Write-in Absentee Ballots which are completed by persons outside the United States who are qualified to vote in the State of Texas pursuant to the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. 1973ff-1, and who timely applied for absentee ballots from appropriate election officials for the April 9, 2002 federal primary runoff election, as long as those ballots otherwise satisfy the requirements of Texas law and are received by appropriate election officials by the deadline established by state law. The State defendants shall assist the party defendants in notifying appropriate election officials concerning the requirements of this Court's order.

    3.  The defendants shall notify the Director of the Federal Voting Assistance Program ("FVAP") of the Department of Defense as soon as this decree has been signed and request that the FVAP take such action as is necessary to notify overseas voters of the its provisions. The defendants shall assist the FVAP in whatever

*Reasonably*
way necessary to publicize these provisions.

4. ~~Defendants shall provide a report to Plaintiff concerning the number of overseas ballots including FWABs, that are received and counted for the April 9, 2002 federal primary runoff election.~~

5. The Court retains jurisdiction of this action to enter such further relief as may be necessary for the effectuation of the terms of this Decree.

ORDERED this 25ᵗᵗ day of March, 2002.

_____
United States District Judge

<u>United States</u> v. <u>State of Georgia</u>

# Attachment 5

# to

# Memorandum in Support of United States' Motion for Temporary Restraining Order and Preliminary Injunction

<u>United States</u> v. <u>State of Georgia</u>

# Attachment 6

## to

# Memorandum in Support of United States' Motion for Temporary Restraining Order and Preliminary Injunction

FILED (GR)
U.S. District Court Clerk
Ronald C. Weston, Sr.
AUG 0 8 2000
By_____
COPY

UNITED STATES OF AMERICA,        )
                                 )
                    Plaintiff,   )
                                 )
          v.                     )        CIVIL ACTION NO. 1:00CV583
                                 )
STATE OF MICHIGAN AND            )        CONSENT DECREE
CANDICE S. MILLER, SECRETARY OF  )
STATE OF THE STATE OF MICHIGAN,  )          Wendell A. Miles
                                 )          Senior, U.S. District Judge
                    Defendants.  )
_____)

A.    STIPULATIONS OF THE PARTIES

          The United States of America, Plaintiff, and the State of
Michigan and Candice S. Miller, Secretary of State of the State
of Michigan, Defendants, stipulate and agree that:

          1.    This action is brought by the Attorney General on behalf
of the United States pursuant to the Uniformed and Overseas
Citizens Absentee Voting Act, 42 U.S.C. 1973ff to 1973ff-6.

          2.    This Court has jurisdiction of this action pursuant to
42 U.S.C. 1973ff-4 and 28 U.S.C. 1345.

          3.    The United States, by this action, seeks injunctive
relief to assure that citizens living abroad, who are qualified
to vote in the August 8, 2000 federal primary election of the
State of Michigan, and who have filed timely applications for
absent voter ballots, will have their ballots counted in the
August 8, 2000 federal primary election.

          4.    The Defendant State of Michigan is charged with the
responsibility of assuring that Michigan election laws, as
applied, comply with the provisions of the Uniformed and Overseas

— 4 —

Citizens Absentee Voting Act, 42 U.S.C. 1973ff to 1973ff-6.

5. The Defendant Candice S. Miller, sued in her official capacity as the Secretary of State of the State of Michigan, is the chief elections officer of the State and is responsible for assuring that elections in the State are conducted in accordance with the law. The principal office of the Secretary of State is located in Lansing, Michigan.

6. On August 8, 2000, a primary election will be conducted in Michigan. This primary election is part of a process for selecting nominees for several state and federal offices, including United States Senator and Representative in the United States Congress.

7. Election officials of the State of Michigan have received timely requests for absent voter ballots from overseas voters, who are entitled to vote pursuant to the provisions of the Uniformed and Overseas Citizens Absentee Voting Act.

8. Under Michigan law, absent voter ballots received after the polls close at eight o'clock p.m. on the date of the election are not counted. Mich. Comp. Laws Ann. § 168.759a (1999).

9. On July 31, 2000, Defendant State of Michigan notified the Director of the United States Department of Defense Federal Voting Assistance Program that many counties in Michigan had experienced ballot printing delays that caused absent voter ballots to be available in many jurisdictions less than 30 days before the August 8, 2000 primary election. Defendant stated a

willingness to enter into a Consent Decree on the acceptance of late ballots from military personnel and citizens abroad.

10. In order to allow overseas citizens a fair opportunity to vote by absent voter ballot, election officials in Michigan must mail the ballots to the voters on a date sufficiently in advance of election day to allow the voter to receive the ballot, cast his or her vote, and return the ballot to the office of the appropriate election official by the time the polls close on election day. The United States Postal Service estimates that a period of 10 to 17 days is a reasonable benchmark from the time of posting to the time of delivery of international mail and that a period of 20 to 34 days is a reasonable benchmark for a round trip if the addressee responds on the day he or she receives the letter. The United States Department of State has estimated that 10 to 14 days is a reasonable one-way international benchmark. The Military Postal Service Agency estimates that at least 30 days are necessary for mail to military personnel to make a complete round trip to and from overseas locales. This estimate takes into account the fact that some military personnel are stationed in remote areas. The Federal Voting Assistance Program of the Department of Defense recommends that states allow 40 to 45 days for round trip mailing time for overseas ballots.

11. Election officials in a number of counties did not mail absent voter ballots to military and civilian overseas voters (who had made timely requests for such ballots) on a date sufficiently in advance of August 8, 2000, in light of the

-3-

estimates of the time it takes for mail to make a complete round trip to and from an overseas locale, to allow such voters to receive the ballot, cast a vote, and return the ballot to election officials by the time the polls close on August 8, 2000.

12.  The failure of local election authorities in Michigan to mail absent voter ballots to military and civilian overseas voters on a date sufficiently in advance of August 8, 2000, so as to allow the voting and return of ballots by the deadline established by state law, may deprive United States citizens of an opportunity to vote in the August 8, 2000 federal primary election contrary to the provisions of the Uniformed and Overseas Citizens Absentee Voting Act.

13.  For purposes of this Consent Decree, jurisdictions that are not in compliance with the Act are (a) jurisdictions that did not have absent voter ballots available for delivery to military personnel and citizens located abroad on or before July 9, 2000; and (b) jurisdictions that did not mail absent voter ballots on or before July 9, 2000 to military personnel and citizens located abroad who made timely application for an absent voter ballot, even though absent voter ballots were available for delivery.

14.  An order of this Court is necessary requiring election officials of the State of Michigan to take corrective action in order to protect the rights granted by the Uniformed and Overseas Citizens Absentee Voting Act.

13.  To ensure that all citizens abroad who are protected under the Act, who are eligible to vote in the State of Michigan,

-4-

and have made timely requests for absent voter ballots, have a reasonable opportunity to have their ballots counted in the August 8, 2000 federal primary election, it is appropriate for this Court to enter an order authorizing the use of the federal write-in ballot provided by 42 U.S.C. 1973ff-2 and extending from the close of business on August 8, 2000 until the close of business on August 18, 2000 the deadline for the return of ballots.

This consent decree is final and binding as to all issues resolved herein.

B. ORDER

WHEREFORE, the parties having freely given their consent, and the terms of the decree being fair, reasonable, and consistent with the requirements of the Uniformed and Overseas Citizens Absentee Voting Act,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. All citizens abroad who are protected under the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. 1973ff to 1973ff-6, and who are eligible to vote in the State of Michigan, and have made timely applications for absent voter ballots, are hereby authorized to use the federal write-in ballot provided by 42 U.S.C. 1973ff-2, in the August 8, 2000 federal primary election.

2. The defendants shall take all steps necessary to ensure that all ballots cast in the August 8, 2000 federal primary

-5-

election received by the close of business on August 18, 2000 by the appropriate election officials are counted as validly cast ballots with respect to all federal offices, so long as the ballots would have been counted if they had been received by the close of business on August 8, 2000, the date of the federal primary election, if they are cast by citizens abroad who are protected under the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. 1973ff to 1973ff-6, and who made timely applications for absent voter ballots.

3. The defendants shall notify the Director of the Federal Voting Assistance Program (FVAP) of the Department of Defense as soon as this decree has been signed and request that the FVAP take such action as is necessary to notify overseas voters of the its provisions. The defendant shall assist the FVAP in whatever way necessary to publicize these provisions.

4. The Court retains jurisdiction of this action to enter such further relief as may be necessary for the effectuation of the terms of this Decree.

Certified as a True Copy
Ronald C. Weston, Sr., Clerk

By ___S. Strauk___
Deputy Clerk
U.S. District Court
Western Dist. of Michigan

Date ___8/8/00___

ORDERED this **8th** day of August, 2000.

_____
United States District Judge

The undersigned agree to the entry of this Decree.

For the Plaintiff
United States of America:

BILL LANN LEE
ASSISTANT ATTORNEY GENERAL

_____
JOSEPH D. RICH
GAYE L. TENOSO
BRUCE ADELSON
Attorneys, Voting Section
Civil Rights Division
Department of Justice
P.O. Box 66128.
Washington, D.C.  20035-6128
(202) 307-6302


MICHAEL H. DETTMER
UNITED STATES ATTORNEY FOR THE
WESTERN DISTRICT OF MICHIGAN

_____
ROBERT I. DODGE
Assistant U.S. Attorney
P.O. Box 208
Grand Rapids, MI  49501-0208
(616) 456-2404

For the Defendants
State of Michigan and
Secretary of State:

_____
GARY P. GORDON
Assistant Attorney General

7

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

COPY 7

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. /:00 v 653 |
| v. | ) | |
| | ) | Hon. |
| STATE OF MICHIGAN AND | ) | United States District Judge |
| CANDICE S. MILLER, | ) | |
| SECRETARY OF STATE | ) | Wendell A. Miles |
| OF THE STATE OF MICHIGAN, | ) | Senior U.S. District Judge |
| | ) | |
| Defendants. | ) | |
| | ) | |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 8, 2000, she mailed via first class mail,

postage prepaid, a copy of the Complaint and proposed Consent Decree filed in the above-captioned

matter to the following:

Gary P. Gordon, Esquire
Assistant Attorney General
G. Mennen Williams Bldg., 7th Floor
525 West Ottawa
P O Box 30212
Lansing, MI 48909

Bill Lann Lee
Joseph D. Rich
Gaye L. Tenoso
Bruce Adelson
Attorneys, Voting Section
Civil Rights Division
Department of Justice
P O Box 66128
Washington, DC 20035-6128

Valerie Gave

VALERIE GAVE, Legal Secretary
United States Attorney's Office
Post Office Box 208
Grand Rapids, MI 49501-0208
616/456-2404

United States v. State of Georgia

# Exhibit A to Attachment 1

# to

# Memorandum in Support of United States' Motion for Temporary Restraining Order and Preliminary Injunction

Table of Georgia Elections Division
Survey Results, July 8-9, 2004

| County | Number of Applications | Date completed |
|---|---|---|
| Appling | 1 | 06/17/2004 |
| Atkinson | 0 | |
| Bacon | 4 | 07/08/2004 |
| Baker | 0 | |
| Baldwin | 12 | 06/21/2004 |
| Banks | 2 | 06/17/2004 |
| Barrow | 9 | 06/22/2004 |
| Bartow | 13 | 06/24/2004 |
| Ben Hill | 3 | 07/01/2004 |
| Berrien | 1 | 06/23/2004 |
| Bibb | 23 | 06/23/2004 |
| Bleckley | | |
| Brantley | 0 | |
| Brooks | 9 | 06/17/2004 |
| Bryan | 20 | 06/18/2004 |
| Bulloch | 12 | 06/24/2004 |
| Burke | 3 | 07/01/2004 |
| Butts | 12 | 06/23/2004 |
| Calhoun | 2 | 07/07/2004 |
| Camden | 40 | 06/18/2004 |
| Candler | 5 | 06/17/2004 |
| Carroll | 17 | 06/22/2004 |
| Catoosa | 11 | 06/18/2004 |
| Charlton | 2 | 06/18/2004 |
| Chatham | 88 | 06/24/2004 |
| Chattahoochee | 14 | 06/23/2004 |
| Chattooga | 3 | 06/21/2004 |
| Cherokee | 37 | 06/28/2004 |
| Clarke | 38 | 06/21/2004 |
| Clay | 0 | |
| Clayton | 55 | 07/06/2004 |
| Clinch | 0 | |
| Cobb | 52 | 06/19/2004 |
| Coffee | 1 | 06/24/2004 |
| Colquitt | 12 | 06/30/2004 |
| Columbia | 58 | 06/25/2004 |
| Cook | 3 | 06/21/2004 |
| Coweta | 11 | 06/28/2004 |
| Crawford | 5 | 07/01/2004 |
| Crisp | 3 | 06/21/2004 |
| Dade | 0 | |
| Dawson | 0 | |
| Decatur | 0 | |
| DeKalb | 202 | 06/23/2004 |
| Dodge | 0 | |
| Dooly | 0 | |
| Dougherty | 2 | 06/21/2004 |
| Douglas | 15 | 06/22/2004 |
| Early | 4 | 06/26/2004 |
| Echols | 0 | |
| Effingham | 3 | 06/29/2004 |

| | | |
|---|---|---|
| Elbert | 1 | 06/21/2004 |
| Emanuel | 7 | 06/18/2004 |
| Evans | | |
| Fannin | 9 | 06/16/2004 |
| Fayette | 60 | 06/21/2004 |
| Floyd | 22 | 06/22/2004 |
| Forsythe | 21 | 06/16/2004 |
| Franklin | 5 | 06/22/2004 |
| Fulton | 125 | 06/23/2004 |
| Gilmer | 5 | 06/21/2004 |
| Glascock | 1 | 06/18/2004 |
| Glynn | 0 | |
| Gordon | 5 | 06/14/2004 |
| Grady | 5 | 06/21/2004 |
| Greene | 1 | 06/30/2004 |
| Gwinnett | 117 | 06/21/2004 |
| Habersham | 14 | 06/29/2004 |
| Hall | 27 | 06/14/2004 |
| Hancock | | |
| Haralson | 2 | 06/18/2004 |
| Harris | 13 | 06/21/2004 |
| Hart | 7 | 06/11/2004 |
| Heard | 0 | |
| Henry | 36 | 06/23/2004 |
| Houston | 71 | 06/22/2004 |
| Irwin | 0 | |
| Jackson | 5 | 06/22/2004 |
| Jasper | 2 | 06/17/2004 |
| Jeff Davis | 0 | |
| Jefferson | 2 | 06/17/2004 |
| Jenkins | 4 | 06/17/2004 |
| Johnson | 0 | |
| Jones | 1 | 06/23/2004 |
| Lamar | 1 | 06/23/2004 |
| Lanier | 0 | |
| Laurens | 15 | 06/16/2004 |
| Lee | 6 | 06/18/2004 |
| Liberty | 55 | 06/29/2004 |
| Lincoln | | |
| Long | 4 | 06/24/2004 |
| Lowndes | 48 | 06/21/2004 |
| Lumpkin | 1 | 06/21/2004 |
| Macon | 4 | 06/18/2004 |
| Madison | 3 | 06/22/2004 |
| Marion | 15 | 06/21/2004 |
| McDuffie | 4 | 06/16/2004 |
| McIntosh | | |
| Meriwether | 5 | 06/25/2004 |
| Miller | | |
| Mitchell | 7 | 06/28/2004 |
| Monroe | 3 | 06/23/2004 |
| Montgomery | 1 | 06/18/2004 |

| | | |
|---|---|---|
| Morgan | 5 | 06/23/2004 |
| Murray | 3 | 06/18/2004 |
| Muscogee | 109 | 06/21/2004 |
| Newton | 11 | 06/21/2004 |
| Oconee | 2 | 06/17/2004 |
| Oglethorpe | 2 | 06/21/2004 |
| Paulding | 19 | 06/25/2004 |
| Peach | 1 | 06/22/2004 |
| Pickens | 3 | 06/22/2004 |
| Pierce | 7 | 06/18/2004 |
| Pike | 4 | 06/16/2004 |
| Polk | 3 | 06/21/2004 |
| Pulaski | 0 | |
| Putnam | 6 | 06/22/2004 |
| Quitman | 0 | |
| Rabun | 5 | 06/22/2004 |
| Randolph | 2 | 06/17/2004 |
| Richmond | 81 | 06/21/2004 |
| Rockdale | 16 | 06/19/2004 |
| Schley | 0 | |
| Screven | | |
| Seminole | 0 | |
| Spalding | 8 | 06/24/2004 |
| Stephens | 0 | |
| Stewart | | |
| Sumter | 5 | 06/22/2004 |
| Talbot | 3 | 06/30/2004 |
| Taliaferro | | |
| Tattnall | 0 | |
| Taylor | 2 | 06/18/2004 |
| Telfair | 3 | 06/25/2004 |
| Terrell | 0 | |
| Thomas | 14 | 07/08/2004 |
| Tift | | |
| Toombs | 15 | 06/28/2004 |
| Towns | 3 | |
| Treutlen | 0 | |
| Troup | 27 | 06/23/2004 |
| Turner | 0 | |
| Twiggs | 1 | 06/18/2004 |
| Union | | |
| Upson | 0 | |
| Walker | 8 | 06/21/2004 |
| Walton | 11 | 06/24/2004 |
| Ware | 10 | 06/22/2004 |
| Warren | 2 | 06/23/2004 |
| Washington | 0 | |
| Wayne | 1 | 06/21/2004 |
| Webster | 0 | |
| Wheeler | 0 | |
| White | 5 | 06/26/2004 |
| Whitfield | 14 | 06/21/2004 |

| | | |
|---|---|---|
| Wilcox | | |
| Wilkes | 2 | 06/11/2004 |
| Wilkinson | 5 | 06/21/2004 |
| Worth | 7 | 06/21/2004 |
| | | |
| Total | 1,972 | |