**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
7/25/05
Luther D. Thomas, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 1:04-CV-2040-CAP |
| THE STATE OF GEORGIA and | ) |
| CATHY COX, Secretary of State | ) |
| of Georgia, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF UNDERSTANDING
## BETWEEN THE STATE OF GEORGIA
## AND SECRETARY OF STATE OF GEORGIA
## AND THE UNITED STATES

This Memorandum of Understanding ("MOU") between the United States Department of Justice (the "United States") and the State of Georgia and Cathy Cox, Secretary of State of Georgia ("Georgia" or "the defendants") is an agreement to resolve the above-captioned civil action under the Uniformed and Overseas Citizens Absentee Voting Act of 1986, 42 U.S.C. §§ 1973ee to 1973ee-6 ("UOCAVA"). This MOU is to be annexed to, incorporated in, and enforceable under, the Stipulation and Order of Dismissal signed on this date and submitted to the Court by counsel for the parties.

The parties set forth their mutual understanding and agreement as follows:

1.    The Georgia General Assembly, during its 2005 regular session, passed Act No. 53 (H.B. 244 of the 2005 Regular Session) ("Act No. 53"), which amended a number of provisions of Georgia's Election Code. The bill contains, inter alia, provisions designed to ensure long-term compliance with UOCAVA by Georgia and its subdivisions.

2.    The relevant provisions of Act No. 53 as signed by the Governor on April 22, 2005, are:

A.    Section 51, which changes the paragraph designations of O.C.G.A. § 21-2-381(a)(1)(G), and retains the Georgia law provisions conforming to Section 104 of UOCAVA, 42 U.S.C. § 1973ff-3, entitling UOCAVA-protected voters to absentee ballots for two federal election cycles with a single application.

B.    Section 52, which adds a new Ga. Code § 21-2-381.2, creating a state write-in absentee ballot for federal and statewide offices for the use of UOCAVA-protected voters. Such a ballot is to be distributed with the absentee ballot sent to such voters so they may fill it out and return it in the event of a runoff. The State Election Board, which is chaired by the Secretary of State, is to devise rules for fax-out and portable document format ("pdf") download of the runoff ballot in blank, and is to establish a website where voters may learn whether a runoff is being held. Runoff ballots from UOCAVA voters are to be accepted up to three days after the runoff election.

C.    Section 53, which amends Ga. Code § 21-2-384(a) to clarify that absentee ballots must be delivered to local registrars at least 45 days before a federal or state election (at least 21 days before municipal elections). Registrars then have two days, as under prior law, to mail the ballots to all voters who have requested them by that time.

D.    Section 54 provides under O.C.G.A. § 21-2-386(a)(1)(G) for a three-day extended period after each primary, runoff or general

election, federal or otherwise, for receipt of voted absentee ballots from UOCAVA-protected voters as long as they are postmarked by the date of the election.

      E.    Section 63 amends O.C.G.A. § 21-2-501(a) to provide that Georgia's run-off elections shall be held 28 days following the initial phase of the general election, an addition of seven days from the current 21 day period for holding a run-off.

      3.    Section 67 of Act No. 53 severs from the rest of the bill any provision "declared or adjudged to be invalid or unconstitutional" after its passage, and retains in "full force and effect" all provisions of the bill other than those invalidated.

      4.    For any change affecting voting contained in Act No. 53 to take effect, it must be submitted for preclearance review under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, and must receive the administrative or judicial preclearance required by that Section. Nothing in this MOU or in the Stipulation to which it is annexed is intended to prejudge or comment on the merits of any administrative or judicial determination that may hereafter be made under Section 5; and the failure of Sections 51, 52, 53, 54, 63, and 67 of Act No. 53 to receive the required Section 5 preclearance will void this MOU and the Stipulation to which it is annexed.

      5.    Because enforcement of the requirements of UOCAVA depends on timely and accurate information about the extent of compliance in each of the state's political subdivisions, Georgia will require each of its 159 counties to report to the Georgia Secretary of State on the mailing of absentee ballots to UOCAVA voters in the following manner:

A.      Georgia and the United States will collaborate on the production, to be completed by August 1, 2005, of a brief questionnaire form designed to request of each of Georgia's 159 counties information necessary to determine the extent of timely mailing of absentee ballots to UOCAVA-protected voters.

B.      The form will ask for the number of absentee ballot applications received on or before the 32nd day before the election from stateside uniformed services voters, overseas uniformed services voters, and overseas civilian voters entitled to vote in the county, the date on which ballots were received in each county registar's office, and the date on which the county completed the sending of absentee ballots to such UOCAVA-protected voters.

C.      Georgia will require each of its counties to complete a copy of this form as of the 32nd day before each federal primary or general election and transmit it by facsimile or other electronic means to the Secretary of State on that day.

D.      Georgia will transmit all forms received forthwith, i.e., on the day they are received or as soon thereafter as physically possible, by facsimile or other electronic means to the United States Department of Justice, Civil Rights Division, Voting Section ("Voting Section"), and to the Federal Voting Assistance Program of the United States Department of Defense ("FVAP").

E.      Because time is of the essence in this reporting arrangement, and with the understanding that the State of Georgia is ultimately responsible for compliance with UOCAVA, the Secretary

4

of State, through the State Election Board, will use all reasonable efforts to cause its subdivisions to complete their reports on the 32nd day before each election for federal office. Pursuant to this MOU and this Court's order, the Secretary of State in using these reasonable efforts as noted above shall use all necessary authority including enforcement action through the State Election Board to enforce the reporting requirements of this paragraph. Georgia will report to the Voting Section and FVAP by telephone, facsimile or other electronic means, on the 32nd day before each federal election or as soon thereafter as physically possible, the extent of its counties' non-compliance with the reporting requirement for that election.

      F.     This reporting arrangement will be in effect through the federal general election of November 4, 2008, and any runoff election held following that election.

      6.     Georgia will include the reporting arrangement and the questionnaire form described in this MOU in any training that it provides to local election officials in the state through the general election of November 4, 2008, and voluntarily thereafter with the understanding that this MOU encourages but does not require it.

      7.     Georgia will promulgate regulations governing the form, content and use of the special state write-in absentee ballot ("SWAB"), as authorized by new Ga. Code § 21-2-381.2, including a provision for the transmission, use and acceptance of the SWAB for primary and general elections in any Georgia subdivision where preparation or mailing of regular absentee ballots to UOCAVA voters for such elections is not completed by the deadlines specified in Ga. Code

§ 21-2-384(a).

Dated this _25th_ day of _July_____, 2005.

For the Plaintiff
United States of America:

For the Defendants
State of Georgia and
Secretary of State of Georgia:


BRADLEY J. SCHLOZMAN
Acting Assistant Attorney General

THURBERT E. BAKER
Attorney General


JOHN K. TANNER
REBECCA J. WERTZ
AMY H. ZUBRENSKY
Attorneys, Voting Section
Civil Rights Division – NWB
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
(202) 514-3232
(202) 307-3961 (Facsimile)

DENNIS R. DUNN
Georgia Bar No. 234098

Deputy Attorney General
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, GA 30334-1300

(404) 656-5614
(404) 657-9932 (Facsimile)

DAVID E. NAHIMAS
United States Attorney


AMY BERNE _w/ express permission by Dennis R. Dunn_
Georgia Bar No. 006670
Assistant U.S. Attorney
600 United States Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
(404) 581-6261
(404) 581-6150 (Facsimile)

7

## CERTIFICATE OF SERVICE

This is to certify that I have this day served or caused to be served a copy of the within and foregoing **MEMORANDUM OF UNDERSTANDING BETWEEN THE STATE OF GEORGIA AND SECRETARY OF STATE OF GEORGIA AND THE UNITED STATES**, prior to filing the same, by first class mail and overnight delivery, with adequate postage addressed thereon, properly addressed to:

> **AMY BERNE**
> **Assistant U.S. Attorney**
> **600 United States Courthouse**
> **75 Spring Street, S.W.**
> **Atlanta, GA 30303**
>
> **JOHN K. TANNER**
> **REBECCA J. WERTZ**
> **AMY H. ZUBRENSKY**
> **Attorneys, Voting Section**
> **Civil Rights Division – NWB**
> **U.S. Department of Justice**
> **950 Pennsylvania Avenue, N.W.**
> **Washington, D.C. 20530\**

This 25th day of July 2005.

_____
DENNIS R. DUNN

Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: (404) 656-5614
FAX:  (404) 657-9932